IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 22, 2008

## RONNELL LEBERRY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40000370     John H. Gasaway, III, Judge**

_____

**No. M2007-01813-CCA-R3-PC - Filed January 14, 2009**

_____

In November 2005 the petitioner, Ronnell Leberry, filed a pro se petition for post-conviction relief. In November 2007, following the appointment of counsel and an evidentiary hearing, the trial court dismissed the petition.  On appeal, the petitioner argues that he received the ineffective assistance of counsel at trial.  After reviewing the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

James Phillips, Clarksville, Tennessee, for the appellant, Ronnell Leberry.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John W. Carney, District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Montgomery County Grand Jury indicted the petitioner on seven counts of aggravated rape, one count of aggravated assault, one count of extortion, and two counts of especially aggravated kidnapping. See State v. Ronnell Jason Leberry, No. M2003-01228-CCA-R3-CD, 2005 WL 711913, at *1 (Tenn. Crim. App. Mar. 28, 2005) (not for citation), perm. app. denied, (Tenn. Oct. 17, 2005).  The petitioner's then-girlfriend, Demetrius "Dee" Grant, was indicted as a co-defendant, but she pled to lesser charges and testified against the petitioner at trial. Id. at *9.  The jury convicted the petitioner of two counts of facilitation to commit aggravated rape and one count each of extortion, aggravated assault, and especially aggravated kidnapping. Id. at *1.  This court affirmed the petitioner's convictions on appeal and, based upon Sixth Amendment violations, reduced the petitioner's sentence of thirty-two years and six months to twenty-eight years. Id. at *25.

On November 28, 2005, the petitioner filed a pro se petition for post-conviction relief.  On January 12, 2006, the trial court appointed counsel.  On January 29, 2007, appellate counsel filed an

amended petition for post-conviction relief, and an evidentiary hearing was held on July 30, 2007.

At the evidentiary hearing, the petitioner testified that he met with trial counsel before trial, but he and counsel did not discuss "any kind of trial strategy" during these meetings. The petitioner said that he identified six potential defense witnesses at trial, including his mother, grandmother, and four other persons: Tiffany Willard, Feticia O'Neal, Raynelle Tillman, and Lynequia Hawkins.[1] The petitioner testified that these persons, whom the petitioner said would have testified that he "had no participation in the events that happened that led up to the charged offense," were subpoenaed and were available to testify. However, counsel did not call any of the potential witnesses and called only one witness, Christy Clayton, in the petitioner's defense. The petitioner surmised that counsel's failure to call any of the potential witnesses resulted from an altercation between his mother and counsel.

The petitioner also testified that he believed counsel was deficient based on counsel's failure to research and present medical evidence that "disputed Demetrius Grant's testimony as to [the petitioner] having sex with other females" while he and Grant were dating. The petitioner said that during the trial, Grant had "said that . . . I caught a [sexually] transmitted disease of gonorrhea before I was with her and that was a lie. . . . I told [Grant], we went to the clinic and we got treated" on May 10, 2000, five days before the offenses. The petitioner said that he gave information regarding this proposed "medical testimony" and evidence to trial counsel, but that counsel never subpoenaed any medical records or used any medical information to cross-examine Grant.

The petitioner testified that a note that was introduced into evidence at trial was not authentic.[2] He said that the note which Grant actually gave to his mother contained only Grant's name, while the note he claimed was introduced at trial contained both Grant's and his names. The petitioner said that trial counsel failed to attack the note's authenticity at trial. The petitioner also said that counsel was deficient for stating during closing argument that "the evidence would show that facilitation of rape was something that you could find from the evidence." He said that he had no idea that counsel was "going to say [anything] like that. Why would I plead to or accept a facilitation when . . . nobody [said] that I did the crime but Demetrius Grant? [The victim] . . . didn't even say I committed the crime."

On cross-examination, the petitioner reiterated that he "did not have preparation with

---

[1]Hawkins testified for the State at trial. See Ronnell Jason Leberry, 2005 WL 711913, at *3.

[2]At trial, Grant testified that the petitioner "talked about the victim paying Grant back for missing work, and the victim stated she would pay whatever they wanted. [Grant] testified that the [petitioner] told the victim to write on paper that Grant could keep the victim's car until the victim paid [Grant]." Ronnell Jason Leberry, 2005 WL 711913, at *8. Grant also testified that "the [petitioner] wanted his name on the paper also because he would be the one driving the car." Id.

[counsel] as far as his trial strategy." He also admitted that both the victim and Grant testified that he was involved in attacking the victim. Furthermore, he admitted that the note about which he complained was not actually introduced into evidence at trial.

Bertha Gennell Perryman, the petitioner's mother, testified that she never talked to trial counsel about her son's case. She said that she was subpoenaed as a witness. She initially said that had she been called, she would have testified regarding the animosity that existed between the victim, the petitioner, and Grant. Specifically, Perryman said that she would have testified regarding an episode in which she heard Grant state that she had on her "[ass-]kicking shoes," a comment which Perryman believed was directed toward the victim. However, when asked whether she would have testified "as a rebuttal witness to things that Ms. Grant was going to testify to," Perryman said that she "really couldn't say. I just know that I got a subpoena to come to [c]ourt" but was never called to testify. Perryman also testified that she would have testified regarding the note about which the petitioner complained, a note which Perryman said she gave to trial counsel.

Geneva Bell, the petitioner's grandmother, testified that she was also subpoenaed to testify at the petitioner's trial but was never called to testify. She said that had she been called to testify, she would have testified regarding threats which Grant allegedly made toward the victim following the victim's failure to pick up Grant for work on a particular day. She also said that she would have testified that both Grant and the victim were "unstable."

After the petitioner's grandmother testified, the petitioner was recalled as a witness, at which time he said that trial counsel was ineffective for failing to file a motion requesting that the trial court give a jury instruction regarding accomplice testimony. The petitioner based this assessment on "a bunch of laws" which state that accomplice testimony "has to be corroborated and it has to be corroborated more than just mere presence or evidence, circumstantial or guesses or mere presence, a connection between the Defendant or the person that is accused of doing the crime." In the petitioner's view, Grant was the only person "[who] actually said that I did any crime. [The victim] did not say that I did any crime." The petitioner testified that because counsel failed to file a motion for an accomplice instruction, this court considered the issue waived on appeal.[3]

Trial counsel testified that he met with the petitioner before trial, but that he did not recall how many times he met with the petitioner. He also did not remember if he subpoenaed any witnesses. Counsel said that he met with the petitioner's mother before trial, but he did not remember the substance of their conversations. However, he did say that if she had given him any information that was "important for the jury to know," he would have called her to testify. On cross-examination, counsel said that he did not recall anything regarding a potential jury instruction on

---

[3]The opinion from the petitioner's direct appeal indicates that this court did not treat the issue as waived and addressed the issue on its merits. Ronnell Jason Leberry, 2005 WL 711913, at *11.

accomplice testimony, and he did not recall discussing his closing argument with the petitioner.

At the conclusion of the evidentiary hearing, the trial court denied the post-conviction petition, giving a lengthy ruling from the bench explaining its reasoning. The order denying the petition was filed by the post-conviction court on November 30, 2007.[4] This appeal followed.

ANALYSIS

The burden of proof in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-372, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The prejudice prong requires a petitioner to demonstrate that "there is

---

[4]As the State notes in its brief, the order denying the post-conviction petition does not contain "written findings of fact and conclusions of law addressing each of the petitioner's claims as required . . . ." See Tenn. Code Ann. § 40-30-111(b) (2006); Tenn. Sup. Ct. R. 28 § 9(A). However, because the trial court made findings of fact and conclusions of law in its ruling from the bench, this error is harmless. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987); Tenn. R. App. P. 36(b).

a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

One of the main elements of the petitioner's ineffective assistance of counsel claim is that trial counsel was deficient for not calling witnesses whom the petitioner had identified. At the evidentiary hearing, the petitioner testified that he informed counsel about six potential witnesses: his mother, Bertha Perryman; his grandmother, Geneva Bell; Tiffany Willard; Feicia O'Neal; Raynelle Tillman; and Lynequia Hawkins. However, only two of these witnesses, Bell and Perryman, testified at the evidentiary hearing. Bell and Perryman said that had they testified at trial, they would have testified regarding the animosity between Grant and the victim. However, several other witnesses testified at trial regarding Grant's dislike of the victim. Furthermore, while the petitioner's mother said that she would have testified regarding the contents of a note which the petitioner claimed was not authentic, the note about which the petitioner complained was not introduced into evidence at trial and does not appear in the record on appeal. Thus, any alleged failure of trial counsel to secure the testimony of these two proposed witnesses did not prejudice the petitioner. Regarding Willard, O'Neal, Tillman, and Hawkins, who did not testify at the evidentiary hearing, this court has long held that when a post-conviction petitioner alleges that defense counsel was deficient in failing to call witnesses, "the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness [at the evidentiary hearing] who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Black v. State, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Furthermore, Hawkins testified for the State at trial, so counsel had the opportunity to cross-examine her and obtain from her the information sought by the petitioner. As such, the petitioner has not established that counsel's supposed failure to call these four persons as trial witnesses prejudiced him.

The petitioner also argues that counsel was ineffective for failing to discuss trial strategy with him before trial. However, apart from his own testimony, the petitioner offered no proof at the evidentiary hearing to substantiate this assertion. As such, we cannot conclude that the petitioner has established through clear and convincing evidence that trial counsel was deficient in this regard.

The petitioner next argues that trial counsel was ineffective for failing to request a jury instruction regarding accomplice testimony. The State contends that the issue is previously determined and therefore this court is precluded from reviewing the issue. The Post-Conviction Procedure Act may not be used to re-litigate issues that this court has previously determined. See Tenn. Code Ann. § 40-30-106(f). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the [issue's] merits after a full and fair hearing." Id. § 40-30-106(h). As the post-conviction court noted, on direct appeal this court addressed the issue of whether the trial court should have given an accomplice instruction:

[T]he [petitioner] was not convicted solely on accomplice testimony, and there were multiple other witnesses to the [petitioner's] actions, including the victim, who also testified. . . . [A]lthough an instruction on accomplice testimony would certainly have been warranted considering the testimony of Grant, we conclude that any error by the trial court with regard to this issue is harmless.

Ronnell Jason Leberry, 2005 WL 711913, at *11. However, the issue of whether counsel was ineffective for not seeking an accomplice jury instruction has not been previously determined, and we will review that issue here.

The proof at trial established that Grant was an accomplice. Therefore, counsel's failure to request a jury instruction on accomplice testimony constituted deficient performance. However, the petitioner cannot establish that counsel's performance prejudiced him in light of this court's prior determination that any error that the trial court may have committed in not giving an instruction on accomplice testimony was harmless. Accordingly, we cannot conclude that the petitioner received ineffective assistance of counsel regarding this issue.

Finally, the petitioner asserts that trial counsel was defective for making certain comments during his closing argument. In the petitioner's view, these comments served as "an admission by [trial counsel] that [the petitioner] was guilty of facilitation of rape." The petitioner also asserts that counsel never discussed the content of the closing argument with him. As the post-conviction court noted, the petitioner offered no other proof, other than his own testimony, to support his assertion. Furthermore, this court has noted that a petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). As such, we agree with the post-conviction court that the petitioner's "suggestion . . . that [trial counsel] made a bad tactical decision as a lawyer" did not establish by clear and convincing evidence that counsel rendered ineffective assistance during his closing argument. Concluding that the petitioner's assertions regarding his ineffective assistance of counsel claim are all without merit, we affirm the post-conviction court's dismissal of the petition.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-